Good afternoon, your honors. May I take just one moment to get myself set up here? Of course. Thank you. Good afternoon. May it please the court, Kimberly Sandberg, on behalf of Marcus McNeal, I would like to reserve three minutes of my time and I will watch the clock. Your honors, Mr. McNeal's trial attorney was ineffective in several ways during his representation of McNeal. But trial counsel's most devastating failure was his failure to deal with this anonymous note. Trial counsel was unreasonable for failing to move pretrial in a pretrial motion in Lemonade to exclude any reference to this anonymous note. And then trial counsel was even more unreasonable and deficient for failing to object during the state's opening when the state told the jury that the anonymous note said something that it did not say. And told the jury that the anonymous note implicated Mr. McNeal in the shooting of the victim, where the note didn't say that at all. This deficient performance allowed this anonymous note to become a central part of Mr. McNeal's trial, even though the note itself was inadmissible. Counsel, wasn't there some indication in the record that defense counsel initially planned to introduce the note as part of the defense case? Yes. So how could it be ineffective assistance of counsel for him not to object to the reference to the note in the opening statement if he planned to introduce the note into evidence? Well, even if he did plan to introduce the note as evidence, and I agree with Your Honor, it does appear from the record that that was his original plan. It is still deficient performance and unreasonable to not object during the state's opening when the state is saying that the note says McNeal was responsible for the shooting when the note doesn't say that at all. In fact, the note doesn't contain the word shooting. It doesn't contain a description of the victim. It contains a description of two unrelated people and says that McNeal was having an argument with them. Correct. But if the plan of the defense was to introduce the note, then couldn't it have been a legitimate strategy to just let the state make the misstatements and then prove the misstatements through the introduction of the note, which would reveal the actual contents? Why wouldn't that be a legitimate strategy? Because there could always be a situation where he couldn't get the note into evidence, where the state decided not to admit the note. He should have corrected. That may be true, but that doesn't make it any less of the fact that the strategy might not have worked doesn't make it any less of a strategy if he planned to introduce it in any event. Even if he planned to introduce it, I believe that he should have corrected the state when they were saying something incorrect to the jury because the state's statements during opening and closing carry such weight with the jury. And so for him to not stand up and object and say that's not what the note says, the note says something entirely different was deficient performance. But even if his plan was to introduce this note and he thought maybe he would show the jury that the state had made a falsehood or whatever during opening statement. The fact that he then changed strategy halfway through the trial, defense counsel himself, and decided to now object to the admission of this anonymous note, that in and of itself was unreasonable after defense had allowed the state to mischaracterize the anonymous note. Let's assume that we agree with you that the Court of Appeals made an unreasonable determination of fact in saying that this was merely an overstatement. Can you talk about how we can know that there was actual prejudice here and that this would have actually changed the outcome of the verdict? Yes, I have two ways to answer that. The first is that looking at the jury's questions during deliberations shows that they were quite hung up on this anonymous note. They wanted to know if they could consider it. They wanted to know if they could see it. They wanted to know how detectives made Mr. McNeil a suspect. And so they were very concerned with this anonymous note during their deliberations, which leads to the inference that they were not sold on the state's case without this anonymous note, which makes sense. And my second point is that the state's case was not strong. Let's look at it the other way, which is the fact that they were asking this question indicated that they also kind of understood that the weight to give this information really should not be so great and that they considered it. They asked this question. Ultimately, that wasn't the basis on which they reached their verdict. I don't believe so, Your Honor. The jury's questions are pretty pointed on the anonymous note. They asked the court if they said the detective referred to it, can we consider it? The answer to their question was the jury is free to consider any and all testimony presented at trial. The detective's testimony was that based on this anonymous note, he made Mr. McNeil a suspect in the shooting of Duncan. Now, how the detective got from the anonymous note to Mr. McNeil as a shooting suspect is beyond me. The anonymous note says nothing about the shooting of Mr. Duncan. The jury said, can we get a copy of the state's opening PowerPoint presentation? It's when the state talked about the anonymous note and said that it implicated Mr. McNeil in the shooting. And now the jury wants to see their PowerPoint presentation. And then finally, I'm sorry. The victim at trial identified your client as the shooter. So why did the anonymous note bring into question the verdict if we have an eyewitness, the victim himself, who identified Mr. McNeil as the shooter? It was not the best identification that the state could have hoped for. The state's evidence was really based on this one eyewitness identification of the victim. The victim was. There was an eyewitness identification of the victim, you said? No, I'm sorry. The victim's eyewitness identification of Mr. McNeil. That was really the only evidence that the state had. There were no other witnesses to the shooting. There was no forensics. It was just Mr. Duncan's identification of Mr. McNeil. When officers arrived, Mr. Duncan told, now this is disputed throughout the record, but Mr. Duncan told the officer, the first officer to arrive, he said either it was a Hispanic male and a black male who shot me. Or in the police report, it says that Mr. Duncan said it was a Hispanic male or a black male that shot me. So his very first indication to officers is that he wasn't quite sure which of this group of men shot him. It was also dark and he had been, he admitted to taking quote unquote booster pills and he had amphetamines in his tox report. It wasn't the best eyewitness identification. It was presented to the jury. Everything was presented to the jury. And apparently the jury, if this was in your words, the only evidence that the prosecution had identifying McNeil as the shooter, the jury apparently believed that testimony. I believe the jury was not ready to convict beyond a reasonable doubt without this anonymous note. The jury believed because of what the state said that the anonymous note was written by a second eyewitness identification. It was not. But that is what the jury believed on this record. Could you turn to the confrontation clause issue? Yes, Your Honor. Your Honor, the way that this note was used during Mr. McNeil's trial is that it was used as a witness to the shooting, even though that's not actually what the anonymous note said. But the way the state used it during its opening statement and then the way the state questioned detective colon actually turned the note into an out of court witness to the shooting when in reality, that's not actually what it was. And so the jury was left with the impression that there was a witness to the shooting that wasn't Mr. Duncan. There was no second witness to the shooting. And of course, the author of the anonymous note was never cross examined and the jury never saw the contents of the anonymous note. Would Your Honors also like to hear about the Batson claim or should I reserve my time for it? I just have one clarifying question, which is it's it's not it's not a Batson claim. It's a claim of ineffective assistance based on failure to make a Batson, which I think makes maybe makes a difference for how we analyze it. It does make a difference. Yes, Your Honor. And so maybe the question is, given that the trial court seems to have opined on the merits and said that it did not it found that there was no intentional discrimination. Isn't that fatal to the ineffectiveness claim? Because it suggests that there would have been no prejudice from the failure to make the claim earlier if we in fact know that the court was going to reject the claim. I believe it's difficult to credit the trial court's decision that these were race neutral reasons for striking the jurors because the jury had already been sworn in. And all of the the people on the jury veneer had been dismissed. And the court even complained about that. When the attorney brought up the Batson challenge, the court said, I've already sworn the jury in. All those jurors have left. If I grant your Batson challenge now, there's no recourse. And then the court went on to say, I find the state's reasons race neutral. I don't know that we can credit that. Was the court really going to at that point grant the Batson challenge? And I also believe that looking at the comparative juror analysis, specifically of juror 102, it's clear that the state's reasons for striking her were pretextual. And if your honors have no other questions, I would like to reserve my time for a rebuttal. All right. Thank you.  We'll hear from the governor. Good afternoon, Your Honor. May it please the court. Jeffrey Conner on behalf of the respondents. Before I dig into my argument, I just want to take a brief moment to express my gratitude on behalf of the attorney general and my colleagues at the attorney general's office for allowing us, giving us the accommodation to move this argument today based on some unforeseen circumstances with one of my colleagues. And appreciate that very much. And also to opposing counsel, because I know this court puts a lot of work into preparing for these arguments. So we're very grateful that you provided this accommodation. Thank you. There's, I think, a lot going on in this case for me to get up to speed on in a very short period of time. And so if the court has direction on anything it has questions that it would like me to address, I'd certainly welcome those. Otherwise, I will start by addressing the arguments that counsel made. I mean, I guess maybe you could start with the discussion of the note at opening statement. Certainly. It is like this whole note is rather curious in this case. The prosecutor, you know, gets up in opening statement and describes the note in a way that's just seems just obviously wrong. And, you know, quite apart from what defense counsel was or was not going to do with the note. I'm having trouble understanding why it would be reasonable for the defense counsel to let the prosecutor stand there and say, you know, we have this note that's really inculpatory when, in fact, like the note is not as inculpatory and certainly not in the way that the prosecutor was saying it was. So can you address that? Certainly. I think the court's questions to my friend on the other side about that drive the point home on it would have absolutely, you know, with counsel's initial trial strategy being that he was going to use that note to destroy the prosecutor's credibility by showing the jury that the prosecutor had misrepresented what was actually in that note. So I think that would absolutely have been a valid strategy for counsel to do that. And I think rolled into that, I would like to point out that I think my friend on the other side started to focus on counsel's subsequent decision to change strategy mid-trial. There isn't an ineffective assistance of counsel claim here addressing counsel's decision to change strategy. The ineffective assistance or the deficient performance that's alleged here is simply how counsel handled not filing a motion in limine and then not objecting to the statements during the opening statements. Right. But I mean, I totally agree it could be a reasonable strategy to let the prosecutor say this thing that's not true and then expose the fact that he was saying untrue things. But you have to actually do the exposing for that strategy to make any sense. And counsel didn't do that. But I mean, I think that's exactly what Strickland talks about, about not second guessing based on hindsight, is that you have to look at counsel's decision making at the time they made the decision. During opening statements, counsel had the plan to use that note as part of his defense. Something happened during the trial that caused him to change that. We know that because he did say on the record, I changed my mind. I'm not going to ask for that and I want to keep it out. There wasn't any development of that decision. That decision is not under review here because they haven't alleged that counsel was ineffective for changing his strategy mid-trial. And so you have to look at counsel's decision based on what was known to counsel at the time they made the decision. That's just standard Strickland analysis. You can't in hindsight look at counsel's decision not to object because he later chose not to use the note to expose the prosecutor. So that's how I would answer that. I think also the court's questions about prejudice also come into play here. The jury was appropriately instructed that statements of counsel are not evidence. Jurors are presumed to have followed their instructions. And I think that when you look at the evidence in this case, I somewhat disagree with my friend on the other side's representation that the only evidence was this eyewitness identification. Yes, he was the only person that identified the defendant. But you have testimony from Rose Hensley where she was present when the officers showed up. And she testified to overhearing Mr. Duncan say that he knew the assailant and that it was a black adult male. And so we have the prior incident where Mr. Duncan had confronted Mr. McNeil and other individuals. And that, you know, so I think that kind of corroborates all his identification there, is the recognition that you've got somebody else who was present in the moments after this shooting occurred who heard the victim say that he knew the defendant or didn't know him by name but knew who he was and recognized him. And then that corroborates his subsequent identification of Mr. McNeil during the presentation of that six pack of photos for him to identify Mr. McNeil. So if there's no further questions on that, I can turn to addressing the confrontation issue. I think the confrontation issue is quite straightforward to me in the sense that there's a footnote in Crawford v. Washington that recognizes when even a testimonial statement is not presented for the truth of the matter asserted, that doesn't trigger the confrontation clause under Crawford. The second thing that I would point out here is the decision on whether or not a statement is testimonial or not under Crawford does not focus on how the statement is used at trial. That's the whole point of that footnote in Crawford. What drives whether or not something is a testimonial statement or not under Crawford and its progeny is the reason the statement was produced. And usually the main focus is like was this like a police interrogation where they're trying to collect evidence that they're going to use at trial or something like that. What was the reasoning for the statement itself? And so why did the production of the statement itself, why did that happen? And so here I don't think that this anonymous note that just happens to appear on a police car at the scene while the police are investigating the shooting is a testimonial statement under the primary source. Would you agree that the prosecutor's statements and the detective's testimony conveyed to the jury that the anonymous note said that Rock was the shooter? I don't. I don't agree with that. I think that that both the federal. How can you not interpret the statement in an opening statement that this anonymous note provided information that Rock was the shooter? How is that not so conveying exactly? I understood your I understand your point, Your Honor. And how I would answer that is that once again, the jury was appropriately instructed that a statement from counsel getting to is whether or not it's testimonial. I'm not I'm not I'm not really asking about whether or not there was prejudice as a result. I'm asking to get to the point of whether or not it's a testimony, whether or not it's testimonial. So it what it wasn't. This isn't a situation like the cases that I'm blanking on the names of the cases that are they're discussed in Ohio versus Clark. I'm blanking on the names of those cases. But there are two to Crawford subsequent cases applying Crawford that were decided where one was deemed to be. This is dealing with an emergency situation and that's not testimonial. I mean, it kind of belies reason and logic that that this reference to the note twice was not intended to convey this fact to the jury. I mean, otherwise, there's no there's no point in including it. And to discussing it, the idea was the reference to the note was to be able to establish that it pointed the investigation towards this individual. So and that but that's exactly why it's it's it wasn't it's not hearsay and fits into the footnote exception in Crawford about it wasn't being used to prove the truth of the matter asserted. It was being used to demonstrate why the investigation went the direction that it did. And so that's that's that then is that's the ruling that the state court made here on the state evidentiary question was that this wasn't presented to prove the truth of the matter asserted. And so in that analysis, it doesn't the jury question sort of this is where I think the jury question is maybe most relevant because it it demonstrates that from the anonymous note was interpreted to be testimony with respect to this individual. So so and I think that comes back to my point about about the the primary purpose rule that drives deciding whether something's testimonial or not. It's not how the jury's going to look at it. It was what's the purpose for creating the statement? I think Davis against Washington. Yes, that's yes. So that that is what drives the decision making on whether something is testimonial or not, is that is the reason the statement was made, not how it's used at trial. And so how it's used at trial, I think, falls into the footnote from Crawford about if something is not used to prove the truth of the matter asserted, then it's not hearsay. And that means it doesn't fall into the rule under Crawford. So I'll quickly also address the question about the IAC Batson claim. I think that goes directly to how I look at that. I don't think you even get to the merits of the Batson question because it is being raised in the IAC context about it being raised too late. But at the same time, it was actually ruled upon. I think if the appropriate way for Mr. McNeil to have gotten the merits of the Batson question before this court would have been for him to either raise it on direct appeal or to have raised a claim that appellate counsel was ineffective for failing to raise the Batson claim on direct appeal. Because we don't have a situation where the state court said your objection is untimely and I'm not going to consider it. And I'm not aware of any clearly established federal law that makes a timing requirement on Batson. Batson itself said we're not going to do this. We're not going to set procedural requirements about when or how Batson has to be raised. And I think that's a recognition of, you know, federalism that jury selection is different all around the country in different jurisdictions. And so there might be different reasons why counsel's timing and raising a Batson challenge might be later than sooner. And I think that's a situation that I think there needs to be flexibility there. And when counsel raises a Batson challenge, particularly considering prong one of the Batson inquiry and a defense attorney wanting to be certain that when they raise the Batson challenge that they're going to be able to get through prong one and force the state to present a race neutral justification. So unless there's any further questions about anything else in the briefing, I'm happy to sit down early and submit. It appears not. Thank you, counsel. Thank you, Your Honor. Good afternoon again, Your Honors. Counsel's decision to not object during opening during the state's opening is unreasonable precisely because trial strategy can change. He didn't know for certain that this anonymous note was going to be introduced to the jury and that the jury would get to see that the state. We use the word lie. That's a strong word, but wildly mischaracterized the contents of the note. He didn't know that. And in fact, strategy did change. And therefore, the jury never saw the note, which left McNeil in the worst possible position. And that's precisely because defense counsel didn't object when the state wildly mischaracterized this note during their opening statement. It left the jury with the impression that this note was written by a second witness to the shooting who said McNeil shot Duncan. And yet then the jury never got to see the note and see what it actually said. And so his failure to object during opening is deficient performance, even if he had a strategy to introduce the note at trial because strategies can change. And therefore, it was deficient not to object. As to prejudice, whatever we think of Mr. Duncan's identification, whether it was strong, whether it was weak, we know the jury was concerned with this note. That's the only questions they asked during jury deliberations. They wanted to know if they could consider the note, if they could see the note. The way the state used the note at trial, to Your Honor's point, is to suggest that it was written by somebody who saw Mr. McNeil shoot Duncan, which of course it didn't. Without the anonymous note, there's a reasonable probability the outcome of this trial would have been different. And unless Your Honors have any questions, I will. It appears not. Thank you. Thank you to both counsel. Thank you. The case you just argued is submitted for decision by the court. That completes our calendar for today. We are recessed until 930 a.m. tomorrow morning. All right. Is this court for recession? It's now adjourned.
judges: RAWLINSON, MILLER, DESAI